Connie CUNICO, Plaintiff,

v.

**PUEBLO SCHOOL DISTRICT NO. 60, et al., Defendants.**

Civ. A. No. 82-M-2188.

United States District Court, D. Colorado.

Aug. 19, 1988.

---

Joseph J. Lenihan, Pueblo, Colo., for plaintiff.

David Crockenberg, Petersen & Fonda, P.C., Pueblo, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

Connie Cunico, plaintiff, began her employment as a social worker for Pueblo School District No. 60 (the District) on February 27, 1977. Initially her salary was paid by another agency. She became a salaried employee of the District in January of 1978. The District's social workers were employed pursuant to annual contracts for school years of 205 days on an administrative salary schedule established by the Board of Education (the Board).

The State of Colorado enacted the Teacher Certification Act of 1975, C.R.S. § 22–60–101 et seq. (1987 Cum.Supp.), to set standards for teachers and professional employees in public schools throughout the state. It also enacted the Teacher Employment, Dismissal and Tenure Act of 1967, C.R.S. § 22–63–101 et seq. (1973), establishing employment rights for teachers, including tenure after three years of continuous employment. There have been subsequent amendments to the tenure statute but they are not relevant to this case. The Teacher Certification Act provides for the certification of teachers by the state board of education. Type A certificates are required for teachers generally; Type B certificates are issued to teachers; Type C certificates are for vocational teachers and school administrators must have Type D certificates. School audiologists, occupational therapists, physical therapists, school nurses, speech correctionists, school psychologists, guidance counselors, school social workers, and peripatologists are classified as "special services" workers who must obtain Type E certificates. The holders of Type E certificates do not have tenure under the Tenure Act. Accordingly, Connie Cunico had no statutory tenure. However, she and the other social workers, like teachers, were evaluated as probationary employees for three years. Her contract for the 1981–1982 school year was marked to show tenure.

Faced with a severe financial exigency during the 1981–1982 school year, the Board decided to limit expenditures by cancelling contracts for teachers and other employees. The Board adopted a policy of emphasizing the importance of classroom teaching and, accordingly, sought to eliminate positions which were "as far away from the classroom as possible." Six schools were closed. Tenured teachers and administrators were given early retirement opportunities. Cancellations and reassignments were accomplished by seniority and endorsements.

All nurses' and social workers' contracts were to be cancelled. When the Board was advised that federal and state law required the retention of two social worker positions, the Board decided to keep Paula Pearson and Martin Quintana. Paula Pearson, a white female, was the most senior social worker employed by the District. Martin Quintana had almost as much seniority and acted as both a social worker and as a psychologist.

The Board memorialized its staff reduction policy in a written statement, Plaintiff's Exhibit 33, which articulated the procedure to be followed. That policy statement defined "teacher" to include "other persons certified by the State Board of Education," and provided in paragraph number 10: "If applicable, a choice of the declared vacancies shall be granted to the most seniored teacher in each endorsement area in the district reassignment pool."

In another written policy statement, Plaintiff's Exhibit 4, the Board established an appeal procedure for teachers and other certified employees receiving a contract cancellation notice. Review was expressly limited "to determine whether the decision

to terminate was arbitrary or capricious with respect to the individual or is otherwise unjustified." Plaintiff's Exhibit 4.

Pursuant to that policy, Connie Cunico and the other five social workers had a hearing before the designated hearing officer, Daniel Martinez, on January 15, 1982. The only black social worker, Wayne Hunter, filed a written complaint of racial discrimination to the Board, dated January 19, 1982, alleging an "obvious pattern of the exclusion of Blacks from every administration level position" and contending that the District "has not worked in 'good faith' toward achieving parity among administrators with regard to Black employees and their distribution throughout the school system." Plaintiff's Exhibit 3.

Under the District's policy, that complaint was investigated by Robert Overstake, the Executive Director of Staff Relations, and Helen Tomicich, Director of Human Relations/Affirmative Action. They advised the Board of their conclusions in a letter, dated January 26, 1982, reading as follows:

It is with regret that the offices of Staff Relations and Affirmative Action notes that the recommended contract cancellation of the complaint creates a temporary set back for the District Affirmative Action goals.

However, we find no evidence of discrimination in the decision to reduce the number of social workers with employment contracts or that the reductions shall occur on a seniority basis.

Therefore, at this time we cannot make a recommendation for reinstatement of the complainant.

Plaintiff's Exhibit 5.

Helen Tomicich testified at the hearing held by Daniel Martinez. She expressed the view that the cancellation of Wayne Hunter's contract was a step backwards in terms of affirmative action: "With Mr. Hunter, he was our only black administrator and we felt that losing our only black administrator was a step backwards, but we felt that due to the financial emergency, that we needed to do that." Exhibit 37, p. 2. Ms. Tomicich was asked what method was used to "RIF the social workers," and she stated "Seniority." Exhibit 37, p. 2.

Mr. Martinez made his findings in a letter to the Board, dated February 9, 1982. He wrote: "The hearing officer finds the decision to terminate the social workers was not arbitrary or capricious or otherwise unjustified except in the case of Wayne Hunter. The hearing officer interprets the policy of the Board of Education regarding minority teachers to mean that they should protect with special consideration the only black administrator in the district." Plaintiff's Exhibit 6. The Board accepted Mr. Martinez's recommendation by a split vote on February 12, 1982, rescinding the cancellation of Wayne Hunter's contract. The cancellation of the contracts of Connie Cunico, Gerald Anaya, Rudy Armijo, Becky Stringer and Roger Ferguson became final.

Connie Cunico seeks relief on claims of racial discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5 and under 42 U.S.C. §§ 1981 and 1983. The Section 1983 claim asserts a violation of equal protection of the laws under the Fourteenth Amendment.

The traditional criteria for evaluating a prima facie case under Title VII, suggested in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is not applicable because the plaintiff is not a member of a "protected minority." As a result of historical experience in this country, the law recognizes that an inference of discrimination arises when a qualified applicant, who is a member of a minority group, is rejected in favor of a white person. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). There is no similar historical basis for presuming discrimination against white people. Therefore, no inference of discrimination arises when a black employee is selected over a white employee. *Parker v. Baltimore & O.R. Co.,* 652 F.2d 1012 (D.C.Cir. 1981). White workers are, however, protected from racial discrimination in employment under Title VII and 42 U.S.C. § 1981,

*McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

Connie Cunico presented direct evidence of racial discrimination. It is clear that race was the only reason for the retention of Wayne Hunter. If Connie Cunico were black, she would have been retained because the District wanted to keep a black administrator, and under their de facto seniority system she would have been entitled to the position. But because Connie Cunico was not black, she was not considered for the position the District earmarked for a black administrator. Such obvious and overt racial discrimination is a prima facie violation of Title VII and 42 U.S.C. § 1981, and a denial of the equal protection of laws provided by the Fourteenth Amendment. The defendants, therefore, must demonstrate a legitimate non-discriminatory reason for their decision.

The District's justification for the racial discrimination in this case was that the cancellation of Wayne Hunter's contract would be contrary to the spirit of the District's affirmative action plan. The plan was initially developed after an investigation and recommendations made by the Office of Civil Rights in the United States Department of Education in 1975. The 1981–1982 version of the affirmative action plan, includes this statement of objectives:

School District 60 has two long range goals in its Affirmative Action Plan. The first is to achieve a diverse, multi-racial faculty and staff capable of providing excellence in the education of its students and for the welfare and enrichment of the community. The second long range goal is to achieve equity for all individuals through equal employment opportunity policies and practices. The district shall actively promote equal employment opportunity by pursuing the following specific objectives:

1. Work toward an equitable balance of women, men and minority employees to reflect the community population on a district wide basis.

2. Achieve a balance in areas of deficiency of women, men and minority employees according to Labor Market Availability for each job classification.

3. Provide equal employment and advancement opportunities for both women, men and minorities.

Exhibit S.

Section IX of the plan and report, titled "the Plan", states the following:

1. The district shall make a concerted effort to employ minority persons in certificated positions which positions involve the delivery of service to the district's students. The ultimate goal of the plan shall be to hire, between school years 1981–82 and 1990–91, minorities in certificated positions to the degree that they will represent from between 33% (minority representation in the Pueblo community) and 45% (student minority representation in the district).

Exhibit S. The section outlines variables which could effect the attainment of the goal and describes how a vacancy will be posted and filled.

Accompanying the plan are charts showing the gender, racial and ethnic composition of employees in job categories, as well as data of the relevant labor markets. Those charts and the testimony established that black persons constitute less than 2% of the relevant workforce, and, indeed, were only two percent of the Pueblo population.

The decision to retain a black administrator was not controlled by any provision of the affirmative action plan. Thus, the district cannot rely on the plan as justification for the preferential retention of Wayne Hunter as a social worker. Accordingly, *United Steel Workers v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), is not applicable and the validity of the affirmative action plan need not be determined in this case. Nonetheless, the Court's approach in analyzing the claims of reverse discrimination in *Weber*, in *Wygant v. Jackson Board of Education*, 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986); *reh'g denied*, 478 U.S. 1014, 106 S.Ct. 3320, 92 L.Ed.2d 728, and *Johnson v. Transpor-*

*tation Agency, Santa Clara County, California,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987), is instructive in this case. If the Board's decision is viewed as a discrete affirmative action or if it could be characterized as inferentially authorized by the existing affirmative action plan, the controlling analysis is whether the plaintiff's rights have been "unnecessarily tramelled."

The plaintiff had a contract right to continued employment as a social worker until the end of the school year in 1982. The plaintiff's seniority over the other five social workers entitled her to retention under the Board's stated policy for this particular staff reduction and under a well established de facto seniority system which entitled her to an objective expectation of continued employment. *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Those rights were destroyed when the Board rescinded the cancellation of Wayne Hunter's contract solely to retain a black administrator. Even if the preferential retention of Wayne Hunter were required by the affirmative action plan, that provision would be invalid. This case differs from *Johnson v. Transportation Agency, Santa Clara County, California,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987). There the Court held that sex could be *one* factor in choosing among qualified applicants for a road dispatcher job because that was a position within a traditionally gender segregated job classification in which women were significantly underrepresented. There was no evidentiary showing that anything other than the scarcity of blacks in the relevant work force was responsible for racial imbalance and the effect of the decision was to earmark this position for a black person. It is clear that race was not simply one factor in choosing among qualified workers—it was the only factor. The reservation of a particular position for a specific race in an affirmative action plan is invalid.

While this court rejects the plaintiff's arguments that racial minorities may not be collectively considered in a statistical analysis of racial discrimination, the small percentage of blacks in the District's population compels the finding that this race specific classification was made without the legal justification that it was a remedy for past discrimination by the District or because the job classification was traditionally segregated. There is nothing in this record to show any causal relationship between the low black population and any action or inaction by the District or the city. The plaintiff's claim for a denial of equal protection is, therefore, controlled by *Wygant.* There, the court expressly held that a preferential layoff scheme unconstitutionally burdened white employees in a seniority system in the absence of proof of a need to remedy prior governmental racial discrimination. The plaintiff is, therefore, entitled to relief under 42 U.S.C. § 1983.

The proof of that claim necessarily supports the statutory claims under Title VII and Section 1981. An unconstitutional articulated reason for disparate treatment cannot be a legitimate reason.

■ The plaintiff has also claimed a breach of contract under common law. Although there has been sufficient proof of a de facto seniority system to support the claims of racial discrimination, the evidence is inadequate to rise to the level of an enforceable contract. The one year contract was not breached because cancellation caused by financial exigency was an implied provision of the annual agreement.

Rudy Armijo, an hispanic social worker whose contract was cancelled, was re-hired as a social worker on August 12, 1982, even though he had less seniority than the plaintiff. The defendants contend that Mr. Armijo was selected because he could speak Spanish and could, therefore, better communicate with the families of hispanic children. However, the job description for the social worker position did not include proficiency in Spanish as a job requirement. Accordingly, the justification for preferring Mr. Armijo over Ms. Cunico is inadequate and the plaintiff was again the victim of an ad hoc decision which was discriminatory.

Connie Cunico was rehired as a social worker on August 20, 1984. She is entitled

to a recovery of back pay from the date of her termination to that date and to recovery of her attorney's fees. At the close of the trial of this case, the court reserved ruling on those amounts with the expectation that they could be determined by agreement.

Upon the foregoing, it is

ORDERED that the plaintiff will recover on her claims of racial discrimination under 42 U.S.C. § 2000e–5 and 42 U.S.C. § 1983 and for a denial of equal protection of the laws under 42 U.S.C. § 1983, and it is

FURTHER ORDERED that counsel shall have thirty days in which to stipulate to the amount of the recovery of damages and attorney's fees. A further hearing will be held if no stipulation is reached.